Case No. 23-519 Thomas G. Coleman, Major, U.S. Air Force, Retired, Appellant, v. Gary A. Ashworth, Acting Secretary of the Air Force Mr. Thayer for the Appellant, Ms. Otusa for the FLE Mr. Thayer, good morning. Good morning. Let's wait until the courtroom clears. Alright. Go ahead. Chief Judge, your honors, may it please the court, my name is Dylan Thayer and I'm here on behalf of the Appellant, Major Thomas Glenn Coleman. The question before this court today is, when a military correction board identifies an injustice, is the board bound to fully correct that injustice? And the answer under the law of this circuit is yes. Major Coleman requested 49 days of constructive service time from the Air Force Board for the correction of military records to compensate him for the 8 to 14 months of time of which he was wrongfully deprived earlier in his career as a result of the Air Force's failure to properly correct the bureaucratic errors regarding his waiver and transfer requests. The board agreed that Major Coleman had suffered an error or injustice, but the board never fully corrected that injustice. What was the error? The error was, your honor, when Major Coleman moved to Singapore in June of 2006, he should have either been transferred to inactive status, effective December of 2006, pursuant to Air Force Instruction 362115, or he should have been granted a waiver of service for that year. Let's take both of those. Let's start with the waiver. What is your authority that shows the Air Force should have granted the waiver faster than it did? Your honor, the Air Force has this waiver process and the board recognized in determining Major Coleman's application that he had suffered an injustice. Whether that was an injustice as a result of the waiver or the transfer, there's not a specific... Just stick with the waiver. What rule did the Air Force break? The Air Force did not break a specific rule regarding the waiver, your honor. There's no rule that necessarily requires the waiver to be processed within a certain period of time. But your honor, as I mentioned, the board recognized that there was an injustice which contributed to his discharge. I mean, we have this precedent that says the alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional costs. So I get that maybe in another circuit, all you would have to do is show that there was an incorrect injustice. But it seems like our precedent suggests we're not going to vacate every military board decision that has an injustice. Two points on that, your honor. So yes, Christ, your honor, does give the board discretion to recognize an injustice. That's correct. When the board is determining whether an injustice has occurred, the board has complete discretion. However, under this court's holding in Hasselhonder v. McGee, the board is required, or v. McHugh, excuse me, the board is required to correct an injustice which it identifies. If a board does not correct an injustice which it identifies, it is acting contrary to its statutory mandate under 10 U.S.C. 1552. So it seems to me that there's a tension between the two forms of error that you've identified. One is you're saying he should have gotten a waiver, which would have allowed him to continue active duty and earn more points. And the other is he should have been inactive, which would have taken him like off the clock for promotion. You can't do both. Like you're either inactive or you get a waiver and you're active. And so there's a tension there. And it just seems to me underlying all of this is your client's failure to request either of those things in a more timely manner. Because he doesn't ask for the inactive status, I think, until September of 2007 when he moved in June of 2000. Was it 2006? He moved in June of 2006. Right, right. But he doesn't request the inactive status until September. And he doesn't request the waiver. Right. Until he requested the inactive status in February of 2007. Your honor. Right. He initially requested the waiver. The waiver was the waiver was the waiver was initially requested in September of 2006. And the inactive status was requested in February of 2007. That's correct. Your honor. So that's correct. Your honor. I understand. Let me just complete my thought, which I understand that he knew he was being transferred to Singapore. Right. That's correct. Your honor. Three months before he went in June. So he knew that in March. So he could have requested either the waiver or the inactive status before even he left in June. And so given that he kind of sat on his rights and didn't request either of these things. And then when he did, they were conflicting things. It's really not clear to me where the injustice is. Well, your honor, a few points on that. So the injustice is, first of all, the onus is on the Air Force under Air Force Instruction 36, 21, 15, paragraph four, four, two, two. When the Air Force is made aware that a reserve member is moving to a country where there is no status of our forces agreement, as is the case in Singapore, the Air Force must transfer the member to an active status. Now, it's not clear when that transfer should occur. And it doesn't say that that has to happen to a sponte as opposed to upon the application of the service member. It's it's my understanding, your honor, that the unit is required to do that of its own initiative. Can you read that? I don't think it says that either. And you could maybe convince me otherwise if you read all of 36, 21, 15, four, four, two, two. But I actually didn't see you quote all that in your brief. I didn't see you attach it to your brief. I Googled it and it was awfully hard to find. I found it with the Wayback Machine. So I'm not even sure you can rely on four, four, two, two when you didn't really make it available. Well, that's that's my that brings me to my second point, your honor. Even if this court finds that there's no requirement that the unit acts to a sponte to transfer Major Coleman, it's not relevant because the board recognized that Major Coleman had suffered an injustice from his discharge. Here's what the 2016 board had to say. While the board recognizes that some error or injustice contributed to Major Coleman's discharge, he has been made as whole as this board is able or willing to make him under the circumstances. I think one way to read that is all the injustices have been corrected. Your honor, I believe that that's not consistent with the plain language of what the board is saying. The board said some error or injustice contributed to his discharge and they made all kinds of correction. I mean, they gave him credit for doing a ton of work he never did. They gave him years worth of good years when he wasn't working. Your honor, they moved his transfer to inactive status back from September of 2008 to August of 2007 in recognition of under Air Force Instruction 362115, because he requested the transfer to inactive status in February of 2007. It should have been effective as of August 2007. So that was that was not compensating him for work he had not performed, your honor. Can I go back to 362115 Judge Pan's questions about it? You concede that we really can't rely on an authority that you didn't make available to us. Your honor, I concede that you can only rely on the authority to the extent that it's quoted in our briefs and the government's briefs and that you can't rely on anything outside of that. But again, your honor, I would I would posit that because the board recognized that there was an injustice here, the exact language of of instruction 362115 is not the precise issue before this court. Fair enough. It seems like you're maybe hanging your hat on that board quote about an injustice. And so would you concede that if I read it differently than if I read that sentence differently than you read it, if I read the board to have said there were injustices in the past, we corrected all the injustices that have happened. There are no remaining uncorrected injustices. If I read it, if I read it that way, would you concede that I'm supposed to rule for the government here? Well, your honor, I think you can't just rely on that one sentence. You have to rely on the board's full constellation of actions here. You have to rely on the 2011 board, which, as you mentioned, recognized that he'd suffered an injustice as a result of the Air Force's bureaucratic waiver bungling. Now, they didn't fully correct that injustice. You can rely on the 2013 board, which also granted him relief, even though they didn't fully correct the eight to 14 months of time for which he has never been compensated. And you can rely on the 2019 board on reconsideration, which said that it concurred with an advisory opinion, finding that Major Coleman was unable to serve. Are you finished? It was unable to serve from May 11, 2006 until August 17, 2007, because he hadn't received his transfer request. So, your honor, it's that one sentence. You're right. That one sentence is very important, your honor, because it does get to the root of the issue. But it's you know, the board has acted in a widely inappropriate way here. It seems like in 2011, during that, there was a decision in 2011, and there were arguments made leading up to that decision. And I think your client asked that 2011 board to make his inactive status effective June 2006, and they declined. The 2011 board, yes, your honor, he did ask that his status be made effective June 2006. And he argued in reply to an advisory opinion that if they weren't willing to do that, they should do it in December of 2006. That's correct, your honor. And so they declined to give him that all the relief he asked for then in 2011. That's right, your honor. It seems a little weird that we're litigating that 2011 decision now, whether it's that there's a six-year statute of limitations, I think, for board to challenge board decisions in court, or whether it's forfeiture. I don't know exactly what the… I understand what you're getting at, your honor. I understand what you're getting at, your honor. Here's why we're litigating this now, your honor. You're right. There is a six-year statute of limitations for board decisions. I'll let you say why you're litigating it now, but before I forget, could you have gone to federal court after 2011 and challenged that 2011 decision for not making him inactive effective June 2006? I suppose Major Coleman could have done that, yes, but Major Coleman wasn't aware in 2011 that he was only going to be discharged 49 days prior to achieving his 18-year right of safe harbor status. So that's the key, your honor, is that, yes, he could have gone following that decision, but he went to the board in 2016 in an effort to correct the new injustice, which was because the board had failed to fully correct the record in his previous applications, he was then denied his statutory right to attain 18 years of safe harbor because he was never fully compensated for that time. But isn't the other piece of this that he couldn't be passed over promotion twice within the time allowed, and your arguments are saying he should have gotten, I guess, more time in which to prove himself, but if he was just not going to be promoted anyway twice within this timeframe, these arguments don't really get him where he needs to go, right? Because there were two times where he was not promoted, and without getting promoted, he still isn't entitled, right? So, your honor, there's two things that are working together there. So, yes, a service member can be discharged or will be discharged when they're twice passed over for promotion, if they're of Major Coleman's rank. However, if a service member attains the 18-year safe harbor under 10 USC 12646, they cannot be discharged for failure to promote. Had Major Coleman been able to attain time towards that 18-year safe harbor for retirement, as he should have been permitted to do and would have been able to do had it not been for the Air Force's bureaucratic errors during those 8 to 14 months that I've been talking about, he would have attained the safe harbor, and at that point, he can't be dismissed for failure to promote. So, the failure to promote, your honor… I guess the facts are just pretty intricate and convoluted, and it's just weird that he wouldn't have been up for promotion twice before that 18-year period anyway. He was up for promotion twice, and he was passed over twice for promotion, but that's not relevant, your honor, because that has no impact on whether he can attain the 18-year safe harbor status in this circumstance, because if he'd been able to earn that time, he would have earned the 18 years, and at that point, he can't be discharged for failure to promote. So, I guess my question is, if he has had a few different, I guess, promotion reviews and has been denied, and I guess my question is, if he is denied twice before he even gets to 18 years, then the 18-year sanctuary is of no moment, and are we clear on this record that he would not have been denied twice even if he had, I guess, gotten some more corrections? Because with all the corrections, his promotion clock has already been extended beyond what's normal, and so it's just not clear to me on this record that he would not have had two promotion reviews in which he did not get promoted even before he got to the 18-year mark on this record. So, if I understand your honor's question correctly, he did have two promotion reviews where he was not promoted. That's what happened. And then he'd be discharged before the 18-year mark, even if you had made these corrections. But your honor, it's not automatic. So, you're still able, even after you're passed over for promotion. So, he was passed over for promotion, but he wasn't automatically discharged. You're still able to earn time toward your clock for the 18 years of retirement. And he was having time taken off of that clock because he wasn't in an active status during the 8 to 14 months, which he lost as a result of the bureaucratic errors. So, he's having time taken away that he can't serve, which doesn't allow him to get to 18 years of retirement, all the while his retirement clocks are running. So, it's getting him closer and closer to that deadline, and he's not able to get what he ultimately has earned. Does that make sense, your honor? It does make sense, but it's still a piece of the puzzle that he has just not earned promotion. It's true that he has not earned promotion, your honor, but it's not… Because the other way to get around this is to earn promotion. Of course. Of course, your honor. Of course it is, your honor. But ultimately, it's not dispositive because even if he doesn't earn promotion, he still has the ability to earn that time in order to get to 18 years of safe harbor, and he was deprived of that opportunity, your honor. I have one, I think, technical question. Do you know if when he moved to Singapore in June 2006, did he have a military service obligation? He had an obligation to continue to try and earn time as a reserve service member toward his retirement. That's why he sought the waiver, your honor. He sought a waiver clearing him of his requirements for that year so that the time would no longer continue to run. Until the waiver came through, and to be honest, to the extent military service obligation is a term of art, I'm not an expert in that area of the law, so I'm not exactly sure what that term of art means. But it's referred to in 362115, so I'm just trying to figure out whether before he got the waiver, did he have a military service obligation? All reserve service members have to complete certain requirements, your honor, each year in order for that year to be considered a good year for their retirement. Right, 50 points, 35 participation points, plus the 15 points. I think that's a yes. Right, yes, yes, your honor. Yes. Okay. Yes. Thank you. Can you explain that waiver? This was kind of interesting to me. He was trying to waive the bad year designation for 2006 in order to get... He was trying to obtain a waiver for the coming year, your honor. Because of the move, the waiver would mean that he wouldn't have to fulfill the service requirements for the coming year, and so therefore it would not be counted as an incomplete year on his record. So he would have an opportunity to earn the time going forward. That waiver ultimately wasn't... No, I understand, but the way that it's been briefed, it said in order for him to be able to continue to earn points in his new assignment, he would have to get a waiver of the 2006 bad year. That's the way it was briefed. Yes. I'm confused about waiving a bad year. Is that waiving a bad year for purposes of transfer versus waiving a bad year? If I... If you could just apply and waive a bad year, then... Yeah, it doesn't work that way, your honor. If I phrased it that way in my brief, what I was driving at is what I'm saying now, which is you waive the requirements for that year, and when you apply for that waiver, you can't just snap your fingers and there's an old bad year and you get rid of it. But that 2006 year ended in April of 2006, so that's why I was confused why you had to waive the 2006 year when you were moving in June of 2006. Yes, your honor. I'm not clear myself as to the intricacies of exactly how that process works. What's relevant for the purposes of this appeal, your honor, is that by not obtaining that waiver, he was accumulating time, which was being taken off of his clock, which would allow him to attain 18 years safe harbor, and he was not earning points, which could allow him to earn complete or good years toward retirement. And why didn't he apply earlier for either the waiver or the... For the waiver, I'm not certain of that, your honor, but what I am certain of is that the board never in any of its decisions stated that Major Coleman had done anything wrong or failed to meet any of his obligations or requirements regarding applying for the waiver or applying for the transfer request. All right, we'll give you a couple of minutes to reply. Good morning, your honors. May it please the court. Christina Otusa for the Secretary of the Air Force. It appears, based on the exchanges that have just taken place, the court already has very thorough understanding of the case, and the secretary completely agrees with all of the court's comments that have been made thus far. One additional point that I would like to add is that Mr. Coleman never applied for the... He never applied for a change to his record based on this waiver argument. In his first application, he had only made the argument regarding the transfer to inactive status, and that was the sole issue that was addressed in that opinion. Now, of course, the secretary has argued on appeal that this issue is forfeited because it was never argued for the district court, and therefore, the secretary relies primarily on that argument, but had this issue been clearly addressed such that both the district court and the secretary understood that he was making this argument, the secretary would have explained that this theory just does not add up. I think that the court has already noted that the actual years at issue, it just... I mean, first, there's no such thing as a... Based on my reading of the record, I think Coleman did preserve the challenge to the waiver request, and I'm just looking at the joint appendix before the board. He raised it. He requested remedies for the delay in transfer to inactive status, as well as the waiver argument. He did that in, I think, the third request, but in any event... And then I think he did raise it also before the district court. So on the merits, though, of this waiver argument, all the board said was, we don't see any unremitied injustice, and that's a pretty broad statement. So what are your view on the merits defeats the waiver argument, the argument about not addressing his waiver request? So your honor just noted that it was raised in the third application. It actually... That argument was not raised in the third application. It was raised in the application for reconsideration. And therefore, that is why it's actually not specifically addressed in the board's decision on the third application, because it was not an argument that was presented to it. Now, as I just noted, Mr. Coleman did raise this argument in the application for consideration, and this is something that was specifically addressed by the advisory opinion, which was effectively agreed with and incorporated by reference by the board's decision. And the advisory opinion noted that there's no such thing as a waiver of your retirement and retention year points. That's just not a thing that exists, and the advisory opinion provides the citation for the policy on that issue. And in response, Mr. Coleman had the opportunity to present a rebuttal, and he provides no evidence to the contrary. So this idea that this waiver of obligations has anything to do directly with retirement or retention year points is just completely unfounded. And I think the reason... I'm sorry, I'm not following your argument, because my understanding of the argument was that he needed a waiver in 2006 before he could earn points in a new position in Asia. And he raised this, I guess, I'm looking at JA-145, where the board acknowledges the contention of error resulting from, quote, his September 2006 requested relief from his fiscal 2006 obligations, and then JA-140 in 2019, acknowledging he was unable to participate from May 2006 to August 2007, quote, due to not receiving a transfer to a new reserve position. So I think he did raise that. But what is your argument on the merits about why he was not prejudiced or that the board adequately dealt with this contention? Because from my reading of the board's decision, all it said was they talk a lot about the inactive status issue, and then it says, and we see no unremitied errors. So what is the argument on the merits that that was adequately addressed? So I'll address both of those questions. First, I think it might make sense if I address your question regarding what the nature of the argument actually is. And it's the secretary's position that this, quote, unquote, waiver does not have to do with his ability to complete the 50 points in a given retirement or retention year. Instead, it's he indisputably received a bad R&R year in 2006. And as a result of that, he got what is effectively a black mark on his record. And sometimes, you know, service members, reservists can be even discharged prematurely and not be permitted to continue with their active reserve duties when they don't complete a given year. Is that entitled to waiver of that 2006 year? And that's what he was seeking. And to date, Mr. Coleman is pointing to no requirement that his unit, I guess, even grant this waiver issue. And so I guess that would be the secretary's response to, I guess, the merits of the issue. I guess to get to the second point with respect to the forfeiture issue, in, I think, certainly, defendant's brief, defendant makes clear that it is understanding Mr. Coleman to solely be arguing about the transfer to inactive status. And while it is a little bit unclear because of the way that Mr. Coleman has framed the issues, what is clear is that he is only making an argument based on past decisions. And therefore, because this was never an issue that had been raised previously, it couldn't have possibly extended to this waiver argument, which was raised for the first time in the application for reconsideration, which is the fourth application to the board. And if you look specifically at the text, the secretary makes clear that this is the understanding that he's making this argument with respect to the transfer to inactive status in the court. And its decision also makes clear that that was its understanding of the issue, because that was the only issue that was raised in that first application to the court. So I appreciate that he may have raised it in the background section of the facts, but if your merits, it went to the merits of his argument, there was no reference included. All right. Thank you. Right. We would ask that the court affirm the judgment of the district court. Thank you. Why don't you take two minutes. So, my friend on the other side, talked a lot about the waiver argument and how it wasn't presented in the district court. Your honor, I believe you said this, but it was argued before the district court. If you look on pages, 5 and 6 of the plaintiff's motion for summary judgment, it's referenced very clearly. And it's referenced again by implication on pages 16 through 18 and the district court on page 13 of its memorandum opinion clearly makes reference to those pages. In the government's brief as well, the government, and this is on page 34 of the government's brief, the government states, while he major Coleman is dissatisfied with the amount of time that it took for his unit to waive his service requirements. He does not identify any policy or regulation that compelled his unit to grant him the waiver. So, the government has recognized the way the waiver works is it waives your service requirements for a given year. That's stated right in their brief on page 34. There's also been a lot of discussion today from the government about how, you know, perhaps the arguments weren't properly presented because major Coleman could have presented these arguments in his first application or his second application, but they weren't presented until his third application, or they weren't presented until the request for reconsideration. Here's the bottom line, your honors. Under 10 USC 1552, the board for the correction of military records in any military service department has broad discretion to correct any record in response to an application made by an applicant when there is a showing of error or injustice. It doesn't matter how many applications there previously have been. If the board decides to review an application, it has broad discretion to correct any error or injustice. The secretary was on notice that these arguments existed because they were in major Coleman's applications. The board in 2016 said an error or injustice contributed to his discharge. He has been made as whole as this board is able or willing to make him under the circumstances. Now, I don't hang my hat exclusively on that 1 sentence. But it does show that the board recognize that an error and justice contributed to major Coleman's discharge. It declined to fully correct that injustice. That's arbitrary and capricious agency action.
judges: Henderson; Walker; Pan